[Cite as *In re Lawrence*, 2026-Ohio-2831.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

IN RE DERRELL LAWRENCE          :

                                          :                    No. 116066

[Appeal by Brian Clinton]          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 23, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. PR02700723

---

*Appearances:*

Cullen Sweeney, Cuyahoga County Public Defender, Britta Barthol and Rachel L. Tallmadge, Assistant Public Defenders, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Marilyn Orkin Weinberg, Assistant Prosecuting Attorney, *for appellee*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Brian Clinton ("Clinton") appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division denying his motion for an order to excuse arrears and order any applicable reimbursements. For the following reasons,

we reverse the juvenile court's judgment case and remand for further proceedings consistent with this opinion.

## I.  Facts and Procedural History

{¶ 2} In February 2002, the State of Ohio, through the Cuyahoga County Child Support Enforcement Agency ("the State"), filed a complaint to establish paternity between Clinton and a minor child Derrell Lawrence ("Derrell") who was approximately 14 months old at the time.  The purpose of establishing paternity was to collect child support, and Darise Lawrence ("Darise"), the child's mother, named Clinton as possibly being Derrell's father.

{¶ 3} In March 2002, Clinton was arrested on an unrelated charge and held in the Cuyahoga County jail until August 12, 2002 when he was sentenced to two years in prison.  Service attempts of the paternity case were sent to Clinton while he was incarcerated but he failed to respond to the complaint or make any other appearance in the case.  On August 29, 2002, the court held a default judgment hearing and found Clinton to be the father of Derrell.  According to Clinton, who was in prison at the time, he never received notice of the judgment.

{¶ 4} Beginning in at least 2008, the State suspended Clinton's driver's license for failure to pay child support.  Starting in 2013, Clinton filed various motions in the juvenile court attempting to disestablish paternity through DNA testing.  All of Clinton's motions were denied.  It is undisputed that, because paternity was established through default, the court had no jurisdiction to order Darise or Derrell to submit to DNA testing.  In March 2019, the juvenile court

terminated the child-support order regarding Derrell because he had reached the age of majority. Clinton had made some child-support payments over the years in order to have his driver's license reinstated and, in 2023, the State seized $17,000 from Clinton toward the arrears. Nonetheless, at the time Derrell turned 18, Clinton was responsible for $43,387.28 in arrears. Darise waived the arrears owed to her and the State continued its attempt to collect the arrears assigned to it as reimbursement for monies it paid to Darise. Eventually, Darise and Derrell agreed to voluntary DNA testing to establish paternity of Derrell. Genetic testing dated December 27, 2023 demonstrated that Clinton is not Derrell's father.

{¶ 5} In April 2024, Clinton filed two motions: 1) Motion to vacate the default judgments for paternity and child support pursuant to Civ.R. 60(B); and 2) Motion to disestablish paternity and relief from judgment as to paternity and child-support order and motion for an order to excuse arrears and order any applicable reimbursements pursuant to R.C. 3119.961 through 3119.964.

{¶ 6} The court held a hearing on Clinton's motions on September 19, 2025. Darise appeared in court, Clinton appeared virtually because he was again incarcerated and Derrell, who is serving a sentence of life in prison, did not appear at all. At this hearing, the State stipulated to the genetic testing results and did not challenge disestablishment of paternity.

{¶ 7} Darise testified that, in 2002, she gave the State the names of two people who could have been Derrell's father. According to Darise, there was an issue with the spelling of one person's last name and the State "stuck with" pursuing

Clinton because they had his correct information and he was "locked up, he wasn't able to get to court . . . ." Darise testified that, at the time, she did not understand what it meant for the court to order Clinton as the default father of Derrell. Darise further testified that she did not agree to genetic testing regarding Derrell's paternity until 2023.

{¶ 8} Clinton testified that, in 2002, he was aware of paternity proceedings regarding Derrell, but he was unable to attend the August 29, 2002 hearing because the State would not transport him from prison to the juvenile court. Clinton further testified that he has never believed he was the father of Derrell, he has never claimed to be the father of Derrell and he has no relationship with Derrell.

{¶ 9} On January 2, 2026, the court issued a judgment entry granting Clinton's motion to disestablish paternity and relief from judgment as to paternity. The court found moot his motion for relief from judgment as to the child-support order because that order terminated when Derrell reached the age of majority and the court delayed his motion to vacate the default judgment pursuant to Civ.R. 60(B) and also denied his motion to excuse child support arrears and order reimbursement.

{¶ 10} Clinton appeals raising one assignment of error for our review.

I. The juvenile court erred and abused its discretion when it denied Appellant's motion for an order to excuse arrearages owed to the State of Ohio.

## II. Law and Analysis

{¶ 11} The court granted Clinton relief from judgment pursuant to R.C. 3119.961 and 3119.962 based on DNA test results and the State's stipulation that Clinton is not Derrell's father.  However, it denied Clinton's motion to excuse child support arrears, which is governed by R.C. 3119.964.

{¶ 12} R.C. 3119.961(A) states, in pertinent part, as follows: "Notwithstanding . . . Civil Rule 60(B) . . . a person may file a motion for relief from a final judgment . . . or order that determines that the person . . . is the father of a child or from a child support order under which the person . . . is the obligor."

{¶ 13} R.C. 3119.962(A)(1) states as follows:

(1) Upon the filing of a motion for relief under section 3119.961 of the Revised Code, a court shall grant relief from a final judgment . . . or order that determines that a person . . . is the father of a child or from a child support order under which a person . . . is the obligor if all of the following apply:

> (a) The court receives genetic test results from a genetic test administered no more than six months prior to the filing of the motion for relief that finds that there is a zero per cent probability that the person or male minor is the father of the child.

> (b) The person or male minor has not adopted the child.

> (c) The child was not conceived as a result of artificial insemination in compliance with sections 3111.88 to 3111.96 of the Revised Code.

{¶ 14} It is undisputed that Clinton filed a motion under R.C. 3119.961, and the court properly granted it because all conditions in R.C. 3119.962(A)(1) applied.

{¶ 15} R.C. 3119.964(B) states as follows:

> If a court grants relief from a child support order pursuant to section 3119.962 of the Revised Code and support arrearages are owed, the court may issue an order canceling that arrearage. Nothing in this section limits any actions that may be taken by the person . . . granted relief under this section to recover support paid under the child support order from which relief was granted.

{¶ 16} This court has held that, if the juvenile court grants relief under R.C. 3119.962, "R.C. 3119.964 vests the court with discretion to cancel any child support arrears." *State ex rel. Lloyd v. Lovelady*, 2004-Ohio-3617, ¶ 16 (8th Dist.). The Ohio Supreme Court affirmed our decision in *Lovelady*, stating that "R.C. 3119.961 et seq. were enacted to make it less likely that a person would be forced to support a child that is not his." *State ex rel. Lloyd v. Lovelady*, 2006-Ohio-161, ¶ 14.

{¶ 17} We review the court's ruling on a R.C. 3119.964 motion under an abuse-of-discretion standard. An abuse of discretion is "a court exercising its judgment, in an unwarranted say, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 18} R.C. 3119.964(B) is not a heavily litigated statute, and the only case Clinton cites in his appellate brief with facts somewhat similar to the facts here is *Garst v. Hopkins*, 2003-Ohio-1557 (2d Dist.). The State also cites *Hopkins* and does not cite any other case with similar facts. In *Hopkins*, a woman gave birth to a child and Hopkins appeared in court and acknowledged paternity. *Id.* at ¶ 4. Hopkins was ordered to pay child support and did so for years. *Id.* When the child was 14, Hopkins filed a motion for genetic testing after "questions about [the child's] paternity had arisen as she had matured." *Id.* at ¶ 5. Genetic testing was ordered

and it was determined that Hopkins was not the child's father. *Id*. The paternity judgment was vacated and the prospective child support was terminated. *Id*. at ¶ 11. However, the court denied Hopkins' request to cancel the support arrearage. *Id*. Hopkins appealed and argued, inter alia, that "the trial court acted unreasonably in holding him to an 'admission' about his knowledge of paternity." *Id*. at ¶ 12. In affirming the trial court's judgment, the Second District Court of Appeals found that the State would be prejudiced if it could not collect child support from Hopkins. "When the State originally initiated the paternity proceeding, Hopkins admitted that he was the father and was the party responsible for the child's support . . . . [T]he State did not have any idea that the facts were not as it had been led to believe." *Id*. at ¶ 15.

{¶ 19} Upon review, we find this case can be distinguished from *Hopkins*. Here, unlike in *Hopkins*, Clinton did not appear at the paternity proceedings and did not admit to being the child's father. Rather, a default judgment was entered against him because he was in prison when the hearing was held and the State failed to transport him to the hearing. Evidence in the record shows that Darise claims to have identified two possible putative fathers, but according to Darise, the State opted to follow up only with Clinton. Finally, Clinton moved to disestablish paternity and get DNA testing for years before it was finally done. We see the prejudice to the parties much differently in this case than our sister court did in *Hopkins*.

{¶ 20} We find that the juvenile court acted in an unwarranted way when it denied Clinton's motion to excuse the child support arrears in this case. The judgment of the trial court was unreasonable, arbitrary and capricious and defies logic. As the Ohio Supreme Court said in *Lovelady*, the paternity statutes "were enacted to make it less likely that a person would be forced to support a child that is not his." *Lovelady* at ¶ 14. Accordingly, Clinton's sole assignment of error is sustained. The juvenile court's judgment denying Clinton's motion to excuse child support arrears is reversed and this case is remanded to the trial court to enter judgment in accordance with this opinion.

{¶ 21} Judgment reversed and case remanded.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
ANITA LASTER MAYS, J., CONCUR